## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHEM-DRY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| SSCD, INC., WALTER SHIPMAN, and BETSY | ) | |
| SHIPMAN, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Chem-Dry, Inc. f/k/a Harris Research, Inc. ("Chem-Dry"), by and through its attorneys, complains of Defendants, SSCD, Inc. ("SSCD"), Walter Shipman, and Betsy Shipman (collectively, "Defendants"), as follows:

### PARTIES

1.      Plaintiff, Chem-Dry, is a Utah corporation with its principal place of business at 3310 West End Ave., Suite 620, Nashville, Tennessee 37203. It is engaged in the business of franchising independent parties to operate Chem-Dry businesses throughout the United States. Chem-Dry franchisees are licensed to use the Chem-Dry trade names, service marks, trademarks, and trade dress, and to operate under the Chem-Dry system of operation, which involves performing carpet, upholstery, drapery, and rug cleaning, tile and stone care, spot removal and protective services, as well as other services utilizing specialized equipment, products, accessories, identification schemes, vehicles, management programs, standards, specifications, proprietary marks, and identification. Chem-Dry is the franchisor under the Chem-Dry franchise agreements, including the franchise agreements between Chem-Dry and SSCD (the "Franchise Agreements"). True and correct copies of the Franchise Agreements are attached hereto as **Exhibit 1** (No. 423050), **Exhibit 2** (No. 223227), and **Exhibit 3** (No. 223247).

2.      Defendant SSCD is an Illinois corporation with its principal place of business at 2662 Bimini Lane, New Lenox, Illinois 60451. SSCD formerly operated as S & S Chem-Dry and was a franchisee under a Chem-Dry Franchise Agreement. SSCD is currently operating as Pure Carpet Cleaning.

3.      Defendant Walter Shipman is President of SSCD and is a 50% owner of SSCD. On information and belief, Walter Shipman is a resident of Illinois and is located within the Northern District of Illinois.

4.      Defendant Betsy Shipman is Vice President of SSCD and is a 50% owner of SSCD. On information and belief, Betsy Shipman is a resident of Illinois and is located within the Northern District of Illinois.

## JURISDICTION AND VENUE

5.      Pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, this court has federal question subject matter jurisdiction over Chem-Dry's federal claims arising under 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"). This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

6.      This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has *in personam* jurisdiction over Defendants because SSCD is an Illinois company with its principal place of business in Illinois and Walter Shipman and Betsy Shipman are Illinois residents.

8.      Pursuant to 28 U.S.C. § 1391, venue is proper in this district and division.

## FACTS

### The Chem-Dry Franchise System

9.     Chem-Dry is the franchisor of the Chem-Dry franchise system ("System"). A Chem-Dry franchised business offers carpet, upholstery, drapery, and area rug cleaning as well as tile, marble, and stone care, spot removal and protective services and other services which may be specified from time to time, under the "Chem-Dry" name and trademarks. A Chem-Dry business utilizes Chem-Dry branded vehicles, cleaning equipment, cleaning solutions and products, invoices, techniques and even clothes to ensure a consistent cleaning experience across the System. As part of the System, franchisees are able to purchase equipment and supply packages tailored to each type of surface cleaning. Franchisees are required to purchase Chem-Dry branded vehicle decals. The branding, technology, and cleaning products are proprietary information intended to provide safe, home, cleaning solutions.

10.     Chem-Dry has been operating as a franchisor since 1978.

11.     There are currently more than 1,000 Chem-Dry franchised businesses across the United States. In the years since the Chem-Dry businesses began, thousands of customers have been served by Chem-Dry.

12.     Through extensive and consistent advertising, promotion, and publicity, Chem-Dry has obtained and holds unique and distinctive trade dress. Specifically, Chem-Dry's logo, website, and equipment all utilize a distinct green and blue color palette (the "Chem-Dry Trade Dress"). Examples of the Chem-Dry Trade Dress, including uses by franchisees, are shown below:



https://www.chemdry.com/residential/carpet-cleaning



https://www.chemdry.com/locations/nashvilletn



https://ktchemdrycarpetcleaning.com/

13. The Chem-Dry Trade Dress is inherently distinctive or has acquired distinctiveness through secondary meaning as Chem-Dry has extensively and consistently used, via its franchisees, the distinctive Chem-Dry Trade Dress for more than five years to identify its cleaning services.

14. The Chem-Dry Trade Dress does not serve a functional purpose: It is an ornamental color scheme and has no function.

15. As a result of the extensive sales, advertising and promotion of items identified by the Chem-Dry Trade Dress, the public has come to know and recognize the Chem-Dry Trade Dress, and to associate it exclusively with products and services offered by Chem-Dry and Chem-Dry franchisees. The Chem-Dry Trade Dress is widely known and is an asset of inestimable value to Chem-Dry, representing and embodying Chem-Dry's considerable goodwill and favorable reputation.

16.     As an additional part of its business, Chem-Dry has developed valuable trade secret information in the form of Chem-Dry's proprietary cleaning products, procedures, software, and customer lists.

17.     Chem-Dry has designed and developed a method for establishing, operating, and performing carpet and upholstery/drapery cleaning, including area rug cleaning, spot removal, protectant services, wood floor cleaning, and tile and stone care services to residential and commercial customers, using Chem-Dry's specifications, standards, operating procedures, supplies, and specialized equipment. Chem-Dry develops and manufactures the cleaning solutions sold to and used by Chem-Dry franchisees.

18.     Chem-Dry has taken reasonable steps to keep its information confidential, including by requiring franchisees to agree that Chem-Dry's confidential information, including its trade secrets, cannot be used outside of the System. *See* Exs. 1, 2, and 3, ¶¶ 5, 6, 16.C.

19.     Information such as Chem-Dry's proprietary products, procedures, software, and customer lists are independently valuable to others in the industry and are not publicly known. If a competitor has access to such information, it would be possible to more easily acquire customers by undercutting Chem-Dry pricing. Moreover, even knowing the contact information of the individuals tasked by customers with contracting for cleaning services can assist in client acquisition by eliminating the need for cold-calling phone numbers.

20.     Chem-Dry has expended substantial resources over the years to create and to protect the highly confidential information necessary to build and maintain a significant business and to compete effectively against others in the industry.

### SSCD's Chem-Dry Franchise Agreements

21.     On or about December 31, 2021, SSCD entered into three Franchise Agreements with Chem-Dry. *See* Exs. 1, 2, and 3.

22.     The Franchise Agreements each contain a Guaranty and Assumption of Obligations signed by Walter Shipman and Betsy Shipman, guaranteeing that SSCD will "perform each and every undertaking, agreement, and covenant set forth in the Agreement" and that they will be "personally bound by, and personally liable for the breach of, each and every provision in the Agreement." *See* Exs. 1, 2, and 3, Ex. A.

23.     Pursuant to the Franchise Agreements, SSCD was granted the right to operate Chem-Dry franchises in the following Franchised Areas: (1) south central Cook County (Franchise No. 423050); (2) Frankfort, Mokena, New Lenox, Lockport, Lemont, Matteson, Richton Park, Romeoville, and Westhaven Cities (in Will and Cook Counties) (Franchise No. 223227); and (3) Chicago Ridge, Midlothian, Palos Heights, Palo Hills, Palos Park, Worth, and Crestwood Cities (in Cook County) (Franchise No. 223247) (collectively referred to hereinafter as the "Franchised Areas"). *See* Exs. 1, 2, and 3, Summary Page ¶ 5.

24.     SSCD and its owners, Walter and Betsy Shipman, agreed that, upon expiration or termination of the Franchise Agreements, for a period of two (2) years, they would not:

> (a) participate in or have any direct or indirect interest (e.g., through a spouse) as a disclosed or beneficial owner, investor, lender, partner, director, officer, manager, consultant, employee, representative or agent, or in any other capacity, in any Competitive Business,
>
> (b) solicit business from customers of the BUSINESS or contact any of our suppliers or vendors for any competitive business purpose, or
>
> (c) divert or attempt to divert any business or customer from the BUSINESS to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System, within:

1.   The Franchised Area as defined in this Agreement;

2. The geographic area encompassed by the Franchised Area(s) of any Chem-Dry Business as of the date of the termination or expiration of this Agreement; or

3. A geographic area that is contained in a circle having a radius of 10 miles outward from the outside boundary of the Franchised Area as defined in this Agreement.

Exs. 1, 2 and 3, ¶ 16.D.

25.     The term "Competitive Business" was defined in the Franchise Agreements as "any business which provides or sells, or grants franchises or licenses to others to provide or sell, carpet or upholstery/drapery cleaning services or products, tile and stone care services or products, spot removal or protective services or products, Approved Services, or any related or ancillary services or products." Exs. 1, 2, and 3, ¶ 6.

26.     Defendants agreed that immediately upon expiration or termination of the Franchise Agreements, Defendants would not identify themselves or any business as a current or former Chem-Dry business, use any Mark, any colorable imitation of a Mark, or other indicia of a Chem-Dry business in any manner or for any purpose. *See* Exs. 1, 2, and 3, ¶ 16.B. Marks are defined as "trade names, trademarks, trade dress, service marks and other commercial symbols." *See* Exs. 1, 2, and 3, ¶ 1.A.

27.     In executing the Franchise Agreements and agreeing to be bound thereby, Defendants also acknowledged that the methods, techniques, formats, specifications, procedures, information, systems, sales and marketing techniques, list of SSCD's current customers, former customers, and those who have inquired about the services provided by the Business, and knowledge of and experience in the development, operation and franchising of Chem-Dry Businesses all constituted Confidential Information that belongs to Chem-Dry. While Defendants

were authorized to use the Confidential Information in connection with their licensed franchises, Defendants were not authorized to use such information for any other purpose. *See* Exs. 1, 2, and 3, ¶¶ 5 and 6.

28.     Defendants agreed that the list of their current customers, former customers and those who had inquired about the services provided by SSCD (the "Customer List") was Confidential Information, was the property of Chem-Dry and constituted a trade secret of Chem-Dry. Defendants further agreed that they did not own the Customer List and that they would not disclose the Customer List, or any portion thereof, to any person or entity other than Chem-Dry or its designee, either during the term of the Franchise Agreements or thereafter. Defendants agreed to only use the Customer List in the operation of its Chem-Dry business and in accordance with the Franchise Agreement. *See* Exs. 1, 2, and 3, ¶ 5.

29.     In exchange for Defendants' agreement to the terms of the Franchise Agreements, Chem-Dry provided Defendants with instructions and support in connection with utilizing Chem-Dry's proprietary cleaning system, Chem-Dry's trademarks and trade dress, customer lists, and an exclusive right to operate in the assigned territory.

30.     Following the expiration or termination of the Franchise Agreements, Defendants were not authorized to use Confidential Information, as defined by the Franchise Agreements, or to use the Marks. *See* Ex. 1, §§ 16.B, 16.C. The termination or expiration of the Franchise Agreements also triggered Defendants' post-termination duties and obligations. *See* Exs. 1, 2, and 3, ¶ 16.

31.     Defendants agreed, upon termination or expiration, to provide Chem-Dry with the Customer List including the customer's first and last name, address with city, state, and postal

code, the telephone number with area code, email address and last date of service and other information required by Chem-Dry. *See* Exs. 1, 2 and 3, ¶ 16.C.

32.     Defendants further agreed that the Customer List and contracts were derived from and were the result of the operation of the Chem-Dry franchised businesses, would not be used in connection with any business other than the licensed franchises and could not be used by, or sold or otherwise transferred to, a third party except as otherwise specifically provided in the Franchise Agreements. *See* Exs. 1, 2, and 3, ¶ 16.C.

33.     Defendants agreed that within thirty (30) days after the Franchise Agreements terminated or expired, Defendants would provide Chem-Dry with written evidence that Defendants had complied with the obligations set forth in the Franchise Agreements. *See* Exs. 1, 2, and 3, ¶ 16.

34.     Chem-Dry and Defendants agreed that each had the right, in a proper case, to obtain temporary restraining orders and/or preliminary injunctive relief from a court of competent jurisdiction. Defendants also agreed that Chem-Dry may pursue injunctive relief without bond but upon due notice. *See* Exs. 1, 2, and 3, ¶ 17.C.

35.     Chem-Dry and Defendants further agreed the prevailing party in any arbitration or litigation shall be entitled to recover from the other party all damages, costs, and expenses, including court costs and reasonable attorney's fees. *See* Exs. 1, 2, and 3, ¶ 17.E.

36.     Finally, the Parties agreed that controversies, disputes or claims related to or based on improper use of the Marks or Confidential Information are outside the Franchise Agreements' arbitration provision. *See* Exs. 1, 2 and 3, ¶ 17.F.

**Defendants Have Failed to Comply with Post-Termination Obligations and Improperly Operate a Competing Business in Violation of the Franchise Agreements**

37.     On or about August 30, 2022, Chem-Dry and SSCD entered into an Addendum to the Franchise Agreements providing that the terms of the Franchise Agreements would expire on June 30, 2024, instead of December 31, 2024.

38.     The Franchise Agreements expired on June 30, 2024.

39.     On June 26, 2024, Chem-Dry sent Defendants a Notice of Expiration and reminded Defendants of their contractual post-expiration obligations under the Franchise Agreements. A true and correct copy of the June 26, 2024 Notice of Expiration is attached hereto as **Exhibit 4**.

40.     The Notice of Expiration reminded Defendants to "[i]mmediately cease to use the Chem-Dry Marks in any way and cease to identify themselves as a Chem-Dry franchisee." *See* Ex. 4.

41.     The Notice of Expiration reminded Defendants to "[r]emove all forms of advertising materials containing any Marks or otherwise identifying or relating to Chem-Dry, including removing all signs, emblems, lettering, logos, or any other indicia of a Chem-Dry franchise." *See* Ex. 4.

42.     The Notice of Expiration reminded Defendants to "[r]eturn to Chem-Dry . . . all copies of your Chem-Dry Business customer list, hard copy and electronic copy." *See* Ex. 4.

43.     The Notice of Expiration reminded Defendants to return equipment to Chem-Dry. *See* Ex. 4.

44.     The Notice of Expiration reminded Defendants to pay the outstanding amount owed pursuant to the Franchise Agreements, which was $3,700.00. *See* Ex. 4.

45.     The Notice of Expiration reminded Defendants of their covenant not to compete, noting that Defendants "are prohibited for a period of two (2) years from participating in or

hav[ing] any direct or indirect interest in any <u>competitive</u> business located within the Franchised Area even if it is a no presence area, within a ten (10) mile radius of the Franchised Area or within the Franchised Area(s) of any other CHEM-DRY franchise or business." *See* Ex. 4.

46.     It has recently come to Chem-Dry's attention that Defendants are operating a Competitive Business, Pure Carpet Cleaning (the "Competing Business").

47.     The Competing Business operates in or around Will County, Illinois.

48.     The Competing Business operates within, or within a 10-mile radius of, the Franchised Areas granted to SSCD in at least two of the Franchise Agreements.

49.     The Competing Business operates in the geographic areas encompassed by the Franchised Area(s) of at least one current Chem-Dry franchisee, K & T Chem-Dry.

50.     Despite agreeing to give Chem-Dry the Customer List upon termination or expiration of the Franchise Agreements, Defendants have failed and refused to do so.

51.     On information and belief, Defendants are using the Confidential Information, including the Customer List, and Chem-Dry's methods, techniques, formats, specifications, procedures, information, systems, sales and marketing techniques in operating the Competing Business.

52.     On information and belief, Defendants wrongfully transferred the Customer List and confidential information about those customers to which they had access as a Chem-Dry franchisee to the Competing Business. Transferring those customers away from legitimate Chem-Dry franchises means the customers are no longer guaranteed to receive the high-quality service that Chem-Dry is known to provide.

53.     Customers improperly transferred to the Competing Business may never return to any future Chem-Dry franchisee. Defendants' intentional interference with the franchise's

business means that the financial well-being of the franchise as an ongoing business is at risk. Even if Defendants are eventually found liable, there is no certainty that the customers will return to the rightful business. Rather, it is just as likely that the customers move to a new contractor, free of the specter of impropriety cast by Defendants' actions.

54.     Chem-Dry is suffering irreparable harm through Defendants' operation of a Competing Business that is harming Chem-Dry's brand and stealing Chem-Dry's Confidential Information, its customers, and profits.

55.     Chem-Dry's business is only as strong as its franchisees, and all members of the Chem-Dry franchise business understand that maintaining the confidentiality of proprietary information and complete compliance with the Franchise Agreements are critical to a healthy business.

56.     Despite agreeing that SSCD would not identify itself or any business as a current or former CHEM-DRY business, Defendants' promotional material for the Competing Business states that "As part of our ongoing commitment to sustainability and eco-friendly practices, we have to [sic] decided to change our name from S&S ChemDry to Pure Carpet Cleaning."



57.     Despite agreeing not to use any colorable imitation of a Mark or other indicia of a Chem-Dry business in any manner or for any purpose, (with Marks being defined to include trade dress,) Defendants' advertising, promotion, and publicity utilizes the exact same color palette as the Chem-Dry Trade Dress:



*https://purecarpetcleaningil.com/*

58.     Based on the Competing Business's promotional material explicitly referencing Chem-Dry, the use of a highly similar color palette to Chem-Dry's Trade Dress represents an intentional act by Defendants to create a connection in customers' minds between the Competing Business and Chem-Dry and to trade on Chem-Dry's goodwill.

59.     Chem-Dry is suffering irreparable harm due to a likelihood of confusion between Defendants' use of an identical green and blue color palette and the Chem-Dry Trade Dress in the eyes of Chem-Dry's rightful customers and through the potentially irreparable loss of business opportunities.

60.     As Defendants acknowledged when signing the Franchise Agreements, the continued use of Chem-Dry's Marks (including the Chem-Dry Trade Dress), System, and related confidential and proprietary business information is causing and will continue to cause Chem-Dry irreparable harm, and Chem-Dry has the right to seek and obtain injunctive relief to enforce, observe and preserve the terms, conditions, and procedures specified in the Franchise Agreement.

61.     The Competing Business's website makes numerous claims regarding the Competing Business's services without substantiation, including the following: "safe for pets and children," "eco friendly services," "using eco-friendly products to ensure a safe and healthy environment for your home or business," and "eco-friendly procedures."

## COUNT I
### Breach of Contract (Franchise Agreements)

62.     Chem-Dry incorporates and realleges all preceding paragraphs.

63.     The Franchise Agreements are valid and enforceable and were freely executed and entered between Chem-Dry and Defendants.

64.     Chem-Dry has performed all its obligations under the Franchise Agreements.

65.     Defendants are utilizing the Chem-Dry Trade Dress in violation of the Franchise Agreements.

66.     Defendants have failed and refused to provide the Customer List to Chem-Dry in violation of the Franchise Agreements.

67.     Defendants are using Chem-Dry's Confidential Information, including the Customer List, in connection with the Competing Business in violation of the Franchise Agreements.

68.     Defendants are operating the Competing Business in violation of the noncompete provisions in the Franchise Agreements.

69.     Each of these breaches has damaged Chem-Dry.

70.     As a result of Defendants' actions and inactions, Chem-Dry has suffered and is continuing to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount in excess of $75,000.00.

## COUNT II
### Trade Dress Infringement

71.     Chem-Dry incorporates and realleges all preceding paragraphs.

72.     Through extensive and consistent advertising, promotion, and publicity, Chem-Dry has obtained and holds the unique and distinctive Chem-Dry Trade Dress.

73.     The Chem-Dry Trade Dress is inherently distinctive, or at a minimum, has acquired distinctiveness through secondary meaning as Chem-Dry has consistently used the distinctive Chem-Dry Trade Dress for more than five years to identify its cleaning services.

74.     The Chem-Dry Trade Dress does not serve a functional purpose: It is an ornamental color scheme and has no function.

75.     As a result of the extensive sales, advertising and promotion of items identified by the Chem-Dry Trade Dress, the public has come to know and recognize the Chem-Dry Trade Dress, and to associate it exclusively with products and services offered by Chem-Dry and Chem-Dry franchisees. The Chem-Dry Trade Dress is widely known and is an asset of inestimable value to Chem-Dry, representing and embodying Chem-Dry's considerable goodwill and favorable reputation.

76.     Defendants' competing business utilizes a color scheme that is identical to Chem-Dry's trade dress outside of the scope of the Franchise Agreements, creating a false designation of the origin of Defendants' business, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their business with the licensed businesses operated by Chem-Dry's other franchisees.

77.     Such adoption of Chem-Dry's Trade Dress violates Section 43 of the Lanham Act (15 U.S.C. § 1125) and the common law.

78.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

79.     As a result of the actions of Defendants, Chem-Dry has suffered and is continuing to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

### COUNT III
**False Advertising**

80.     Chem-Dry incorporates and realleges all preceding paragraphs.

81.     Defendants make numerous unsubstantiated claims about the Competing Business's services, including the following: "safe for pets and children," "eco friendly services,"

"using eco-friendly products to ensure a safe and healthy environment for your home or business," and "eco-friendly procedures."

82.    Defendants' promotional material moreover imply that these claims about the Competing Business's services differentiate them from Chem-Dry, stating "[a]s part of our ongoing commitment to sustainability and eco-friendly practices, we have to decided to [sic] change our name from S&S ChemDry to Pure Carpet Cleaning."

83.    On information and belief, Defendants are misrepresenting the nature, characteristics, and qualities of Defendants' goods, services, and commercial activities and Chem-Dry's goods, services, and commercial activities, in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125) and the common law.

84.    As a result of the actions of Defendants, Chem-Dry has suffered and is continuing to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

### COUNT IV
### Unjust Enrichment

85.    Chem-Dry incorporates and realleges all preceding paragraphs.

86.    Defendants have been unjustly enriched by Defendants' actions, including but not limited to taking wrongful advantage of the industry knowledge, trade secrets and training Chem-Dry provided.

87.    Chem-Dry is entitled to damages in an amount to be determined at trial for such unjust enrichment.

### PRAYER FOR RELIEF

WHEREFORE, Chem-Dry requests that this Court:

1.      Enter a judgment requiring Defendants and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly violating the confidentiality and non-competition provisions in the Franchise Agreements in any manner, and further enjoin the operation of the Competing Business or any other competing businesses for a period of two (2) years;

2.      Enjoin Defendants, and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly disclosing, using or otherwise employing for any reason Chem-Dry's confidential and proprietary business information, and from otherwise engaging in unfair competition with Chem-Dry;

3.      Enjoin Defendants, and Defendants' agents, servants, employees, attorneys, and all others in active concert or participation with them, from directly or indirectly infringing upon Chem-Dry's Trade Dress;

4.      Enter a judgment in favor of Chem-Dry for the damages incurred as a result of Defendants' breaches of the Franchise Agreements and other wrongful actions;

5.      Award Chem-Dry prejudgment interest in accordance with the Lanham Act and applicable law;

6.      Award Chem-Dry its costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreements and the Lanham Act; and

7.      Award Chem-Dry such other relief as this Court may deem just and proper.

This the 10th day of February 2025.          Respectfully Submitted,

**HUSCH BLACKWELL LLP**

By:  s/Ann M. Maher
Ann M. Maher
Husch Blackwell LLP
511 North Broadway, Suite 1100

Milwaukee, WI 53202
Phone: 414.978.5410
Fax 414.223.5000
ann.maher@huschblackwell.com